IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IGOR BENOIT CASTANG, | ) | |
| | ) | |
| PETITIONER, | ) | |
| | ) | Case No.:  1:22-CV-5136-SCJ |
| v. | ) | |
| | ) | |
| KATHERINE JEONG-EUN KIM, | ) | |
| | ) | |
| | ) | |
| RESPONDENT. | ) | |

## **VERIFIED PETITION FOR THE RETURN OF THE MINOR CHILD**

COMES NOW, Petitioner, IGOR BENOIT CASTANG (hereinafter "Father"), and files this, his *Verified Petition for the Return of the Minor Child* (hereinafter "*Petition*") pursuant to The Convention on the Civil Aspects of International Child Abduction, signed at The Hague on October 25, 1980, and The International Child Abduction Remedies Act, 42 U.S.C. 11601 et seq. and respectfully shows this Court as follows:

# INTRODUCTION

1.

This *Petition* is brought pursuant to The Convention on the Civil Aspects of International Child Abduction, completed at The Hague on October 25, 1980 (hereinafter referred to as "The Hague Convention"), and the International Child Abduction Remedies Act (hereinafter referred to as "ICARA").

2.

It is filed as a result of the illegal and wrongful international removal and retention by Respondent (hereinafter "Mother") of the parties' Minor Child in the United States of America from Father and in breach of Father's rights of custody from the Minor Child's habitual residence of France, where the child resided since his birth.

3.

The objectives of The Hague Convention are as follows: (1) to secure the immediate return of children wrongfully removed or wrongfully retained in any Contracting States; and (2) to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in other Contracting States. *Convention, Art.1*.

## JURISDICTION AND VENUE

4.

This Court has jurisdiction under 42 U.S.C. §11603, because this case involves the wrongful removal and retention of a Minor Child under the age of sixteen in the United States from the Child's habitual residence, France. Upon information and belief, Child and Mother are residing in the home of Mother's biological Father located in Lilburn, GA 30047, which is located within the jurisdiction of this Court in Gwinnett County, Georgia, USA.

## STATEMENT OF FACTS

5.

Mother is a United States citizen. Father is a French citizen. Minor Child has dual citizenship. Minor Child is a citizen of the United States and France. See Mother's birth certificate attached as **Exhibit "1"**, Mother's passport as **Exhibit "2"**, Father's passport attached as **Exhibit "3"**, and Child's French birth certificate as **Exhibit "4"** and Consular Report of Birth Abroad for Minor Child attached as **Exhibit "5"**.

6.

Father and Mother met in May 2014 in Atlanta, Georgia. Father and Mother

have never been legally married.

7.

The parties were involved in a romantic relationship from approximately September 2014 to approximately December 2021. Mother became pregnant with the Minor Child in October 2017.

8.

In March 2018, the parties relocated to France as their permanent place of residence with the Minor Child. Mother was already pregnant with the Minor Child, and the parties agreed that the Minor Child shall be born and raised in France. Father and Mother consented to the Pacte Civil de Solidarité (Pacs).   Pacte Civil de Solidarité is the French equivalent of a civil partnership.

9.

The parties are the biological parents of A.S.C. (hereinafter "Child" or "Minor Child"), a son born in France in 2018 with dual citizenship of both the United States and France. Child was born out of wedlock; however, Father is the biological Father of Minor child, A.S.C.   Father has rights of custody to Minor Child. As such, Father exercised his rights of custody of Minor Child prior to the wrongful removal and wrongful retention of Child in the United States and

Mother's wrongful removal and retention of the Minor Child in United States breached Father's custodial rights to Minor Child.

10.

Shortly before Minor Child's birth, Father and Mother's relationship began deteriorating as Mother displayed violent and erratic behavior. The relationship continued to deteriorate between the parties after the Minor Child's birth.

11.

Since Child's birth, Father supported Mother and Minor Child and secured living arrangements for her and Minor Child in France. The relations between Mother and Father were on and off, but Father always prioritized the Child and provided necessary care for the Child, including financially supporting Minor Child.

12.

Minor Child has resided in France since his birth. See Minor Child's medical records attached hereto as **Exhibit "6".**   Between 2018 and 2019, Minor Child traveled to the United States a few times for short vacations and to visit extended family that resided in the United States. Father paid for the tickets.

13.

From September 2019, Father, Mother, and Child lived in an Airbnb around Saint-Étienne-du-Grès in the Provence-Alpes-Côte d'Azur region in Southern France.

14.

In March 2020, France was affected by Covid -19 pandemic and a nationwide lockdown was announced by the French government.

15.

After two weeks of lockdown, Mother threatened Father with a knife, and Father was forced to move out.

16.

Once the nationwide lockdown was lifted, Father rented an apartment in Castelnau-le-Lez in the Occitanie region of Southern France.   Mother and Minor Child moved into Father's apartment in Castelnau-le-Lez. In September 2020, the parties enrolled the Minor Child in the school in Montpellier, France.

17.

Between July 2020 and August 2021, due to the end of their romantic relationship, Father and Mother alternated between living together and apart.

18.

In November 2020, when the child was two years of age, Mother refused to see Child for approximately three weeks.

19.

During that time, Father and Minor Child lived in Mas de Beaupre, France, Father was the primary caregiver for the child. The child attended French school located at Castelnau-le-Lez twice a week. See school photographs attached as **Exhibit "7".**

20.

In February 2021, Father initiated a legal procedure related to the custody of Minor Child with the Tribunal Judiciaire de Montpellier, France.

21.

 From the Summer of 2021 until the end of December 2021, Father, Mother, and Child resided in an apartment in Castelnau-le-Lez, France.

22.

On September 9, 2021, the Court entered the first custody order.  See Tribunal Judiciaire de Montpellier ruling dated September 9, 2021, attached as **Exhibit "8".** According to the Court's ruling dated September 9, 2021, Mother

and Father share parental authority related to the Child.   Additionally, the Court stated that parents have to be in agreement for all the important decision of Child's life, including education, religion, health, and dangerous sports activities. Further, the Court stated that Mother had the primary custody of Minor Child and Father has parenting time every Tuesday night to Wednesday night as well as overnight parenting time every other weekend.

### 23.

Between September 2021, and the end of December 2021, Father, Mother, and Minor Child resided together as family unit. During this time Father and Mother shared parental responsibilities and duties. The Minor Child attended the school in France. See **Exhibit "7"**.

### 24.

In the beginning of 2022, the civil partnership (Pacte Civil de Solidarité (Pacs)) that Father and Mother had been involved   in was dissolved.

### 25.

In February 2022, Mother informed Father that she intended to relocate to the United States. In February-March 2022, Mother communicated regarding the same with Father and Father's family members. See copy of communication

dated March 23-24, 2022, attached hereto with   the paternal grandmother as **Exhibit "9"**.

26.

Father immediately initiated the second legal action in France in order to prevent Mother from taking Minor Child to the United States.

27.

From the beginning of March 2022, the Child resided with Father at Mas de Beaupre in the maternal grandmother's estate in Saint-Etienne-Du-Gres, and Mother saw Minor Child once a week. Father did not prevent Mother from seeing Minor Child nor from spending quality time with the Child.

28.

Around the end of March, 2022, Mother tried to forcefully enter the paternal grandmother's house at the Mas de Beaupre by attempting to break the door while Father and the Minor Child were inside the house. Father was forced to call the police due to Mother's violent and unruly behavior.

29.

See copies of police reports attached hereto as **Exhibit "10"**.

30.

In order to prevent Mother from leaving France with the Minor Child, Father filed for a temporary emergency order prohibiting Minor Child from traveling outside of France. See a copy of the temporary emergency order prohibiting Minor Child from traveling outside of France issued by French Interior Minister dated May 6, 2022, attached as **Exhibit "11"** that specifically stated that the Minor Child could not leave France for a duration of 15 days.

31.

However, despite the temporary emergency order prohibiting Minor Child from traveling outside of France, Mother tried to leave with child from Paris, France, but was stopped at the Paris CDG Airport at the French border on approximately on May 10 or May 11, 2022.

32.

In addition, Father immediately requested the permanent order prohibiting Minor Child from leaving France that was granted by JAAF judge of the Family Matters Court in France on May 17, 2022. See a copy of the second custody ruling and permanent order prohibiting Minor Child from leaving France dated May 17, 2022, attached as **Exhibit "12".**

33.

The travel ban was then also entered by the Republic DA in the letter dated May 31st, 2022. See a copy of the letter attached as **Exhibit "13"**.

34.

The permanent order prohibiting Minor Child from leaving France, dated May 17, 2022, specifically states that until the child is 18, Child is permanently prohibited from leaving France. The restriction for travel could be temporarily lifted only if both parents would consent to a trip abroad.

35.

On May 17, 2022, the French  Court entered the second custody ruling. See attached as **Exhibit "12".** The second ruling referenced the first ruling and left the same parental responsibilities and custody rights arrangement, but specifically stated that Minor Child is prohibited   from leaving France unless both parents consent to the trip (ne exeat clause). See a Tribunal Judiciaire de Montpellier ruling dated May 17, 2022, attached as **Exhibit "12".**

36.

On June 7, 2022 Mother intentionally violated the Court's order and took Minor Child to Barcelona, Spain, and from Barcelona flew to the United States and

took the Minor Child out of France without Father's consent or knowledge.

37.

Approximately on June 8, 2022, Mother and Minor Child arrived in the United States.

38.

Mother and  Minor Child temporarily stayed in the home of Mother's biological Father located in Lilburn, GA 30047.

39.

Three days after arrival, Mother contacted Father and requested him to cover fees for an Airbnb as Mother's biological father requested that Mother and Minor Child leave his house, and Mother was unable to support Child and provide for Child.

40.

Between June 8, 2022 and August 2022, Mother contacted Father with numerous requests for financial support for the minor child as she was not able to secure proper housing and employment and   could not provide for Child.   Father gave some funds to   Mother to make sure Child is safe. Mother expected Father to pay all the expenses for the Mother too.

41.

Father flew to the United States on July 19, 2022.

42.

Father confirmed that Mother had no employment, had unreliable living arrangements, and that Minor Child who at that time was three years old was not enrolled in any school or daycare. Mother was unable to provide the necessary arrangements for the Child.

43.

Using the first opportunity when the Mother was absent, on August 4, 2022, Father returned Child back to France. Father and Minor Child continued to live in the same place where Child previously resided with the Father in Saint-Etienne-Du-Gres.

44.

From August 5, 202, Child resided with the Father in Saint-Etienne-Du-Gres and Mother had visitation.   Father continued to help Mother financially after she returned back to France on August 11, 2022.

45.

Considering Mother's previous kidnapping of the Minor Child in violation

of the Court order dated May 17, 2022 and Mother's noncompliance with the French custody order, on August 13, 2022 Father filed third legal action for custody which is currently pending. See a copy of the third petition   with exhibits submitted to the French Court attached as **Exhibit "14"**.

46.

With the consent of the Mother, Father enrolled Minor Child in a public school in Saint-Etienne-Du-Gres, Ecole Maternelle Publique Saint-Etienne-Du-Gres. See Mother's consent attached as **Exhibit "15"**.

47.

Child started attending Ecole Maternelle Publique Saint-Etienne-Du-Gres school on September 3, 2022 and attended the school until the date Mother wrongfully removed Minor Child again and wrongfully retained him in the United States.   See copies of the records attached as **Exhibit "16"**.

48.

At the end of September 2022, Mother visited her grandmother in Korea for approximately two weeks.

49.

Between August 5 2022 to November 13, 2022 (when the Child was

wrongfully removed from France), Minor Child lived with Father in Saint-Etienne-Du-Gresnd attended school. See **Exhibit "16"**.   Father did not leave Mother with the Child unsupervised.

50.

On Sunday, November 13, 2022, Father, Mother, and Minor Child had lunch together at a café in Saint-Rémy-de-Provence to allow Mother some visitation with the Child.

51.

While Father stopped to pay for the lunch inside, Mother quickly took the Minor Child outside and subsequently to her Airbnb, which was less than two minutes away from a café in Saint-Rémy-de-Provence, without Father's permission.

52.

Mother refused to return Child to Father. Father contacted the police and requested their assistance in accessing the child. See **Exhibit "10".**

53.

However, the police decided not to interfere as it was a civil matter. Father returned to Mother's apartment several times on the same day and knocked on the door, but Mother refused to let him in or allow Father to see Child.

54.

The following day, on Tuesday, November 15, 2022, Mother checked out of the Airbnb and disappeared with the Minor Child. From November 14, 2022,

55.

Father had no specific information regarding the Minor Child's whereabouts. Father came back to the Mother's apartment on Tuesday, November 15 and Wednesday, November 16, 2022 but the Mother and the Child were not there.

56.

On Thursday, November 17, 2022, Mother used Father American Express Credit Card in Barcelona, Spain. Later the same day, Father received another notification about   a rent transaction in Lisbon, Portugal.

57.

On Friday, November 18, 2022, Mother once again used Father American Express Credit Card in Philadelphia, Pennsylvania, United States. A similar transaction was recorded on Wednesday 23, 2022.

58.

Since November 13, 2022, Father has had no access to the Child other than

a few emails exchanged with Mother and four quick video calls with Child, however, Mother would not disclose the exact location of the Child.   Father did not know where the Child was or the Child's address.

59.

Since the Child was wrongly removed from France and retained in the United States, the first time Mother indicated Child's address to Father was on December 27, 2022, when Mother stated that she was at the maternal grandfather's house in Lilburn, Georgia.

60.

Father's third custody hearing is scheduled for January 10, 2023 to be held in France by the Family Court (JAAF).

61.

See photographs of Father and Child attached as **Exhibit "17".**

## <u>WRONGFUL REMOVAL AND RETENTION OF THE CHILD<br>BY THE RESPONDENT:</u>

62.

Father restates and re-alleges the allegations contained in Paragraphs One (1) through Sixty One (61) as if fully set forth herein.

63.

The Hague Convention applies to cases where a Child under the age of sixteen (16) years has been removed or retained from their habitual residence in breach of rights of custody of a plaintiff, which the plaintiff had been exercising at the time of the wrongful removal or wrongful retention of the Child.

64.

Minor Child at issue in this case is under the age of sixteen (16).

65.

The habitual residence of the Minor Child is France. Immediately before the wrongful removal and retention of Minor Child by Mother from France to the United States of America, Minor Child's habitual residence was France since his birth in 2018.

66.

Father is the biological Father of Minor Child and has custodial rights to Minor Child, including the right of shared parental authority on the issues related to education, religion, health, and sports activities, as well as the right to determine the child's place of residency and the right to stop Mother from removing   Child from France (*ne exeat clause*). Mother wrongfully removed and retained the Minor Child

in the United States in breach of Father's   custody rights.

67.

Article Three of The Hague Convention reads, in pertinent part:

> **"The removal or the retention of a child is to be considered wrongful where – a) it is in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention; and b) at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention."**

68.

At the time of Mother's wrongful removal and retention of Minor Child, Father was exercising his custodial rights within the meaning of the Convention, as he was the Child's caregiver since the Child's birth, and the Child's primary caregiver since approximately August 5, 2022. Prior to that time, Mother and Father shared parental authority and custody rights.

69.

Father is requesting the return of Minor Child to France by virtue of filing this immediate action.

70.

Father has taken all legal steps available to him to seek the return of Child to France, both in the United States and France.

71.

Father has never acquiesced or consented to the removal of Minor Child from France and the retention of Minor Child in United States of America.

72.

Minor Child is currently physically located within the Northern District of Georgia in Gwinnett County, Lilburn, Georgia.

## **ATTORNEY'S FEES AND COSTS (22 USC §9007)**

73.

Father has incurred significant attorney's fees and litigation costs as a result of the wrongful removal and retention of Minor Child by Mother in the United States.

74.

Father respectfully requests that this Court award him all litigation costs and attorney's fees incurred in this action, including transportation costs incurred by Father as required by (22 USC §9007).

## NOTICE OF HEARING (22 USC §9003(c))

75.

Pursuant to 22 USC §9003(c), Mother shall be given notice of these proceedings in accordance with the laws governing notice in interstate Child Custody proceedings.

## PROVISIONAL AND EMERGENCY REMEDIES

76.

Father requests that the Court issue a Show Cause Order forthwith ordering the appearance of Mother and Minor Child before this Court on the first available date on the Court's calendar and directing Father to serve the Show Cause Order on the Mother by process forthwith.

77.

Pursuant to 42 U.S.C. §11604, in a proceeding for the return of a Child, "[n]o court exercising jurisdiction...may...order a child removed from a person having

physical control of the child unless the applicable requirements of State law are satisfied." 42 U.S.C. § 11604. In this case, the law referred to is that of Georgia. In Georgia, the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA") is the source for statutory law governing, *inter alia*, the resolution of both domestic and international child custody disputes and is codified as O.C.G.A. §19-9-40 et seq. Georgia law addresses the appearance of the parties and the children in such cases and authorizes this Court to order the appearance of the children and custodian or custodians *together*. This Court therefore has the authority to issue a Show Cause Order, ordering the immediate appearance of Mother and Minor Child in that the provisions of O.C.G.A. §19-9-40 et seq. can be met.

78.

Due the high flight risk of the Mother with Minor Child  (Mother was previously hiding with Minor Child in Philadelphia and just recently arrived to Georgia, United States and has abducted Child before in June 2022) Father further requests that, along with the Show Cause Order, this Court issue an immediate Order including an ex parte Order, prohibiting the removal of Minor Child from the jurisdiction of this Court during the pendency of the proceedings in this Court,

including that this Court immediately take into safe keeping all of Minor Child's travel documents and set an expedited hearing on the *Petition*.

79.

Pursuant to Article 11 of the Hague Convention, judicial authorities are to act expeditiously in Hague Convention matters. The Hague Convention provides for a six-week time frame to reach a resolution of all judicial matters. *See Chafin v Chafin*, 133 S. Ct. 1017 (2013).

## **RELIEF REQUESTED**

**WHEREFORE,** Father, IGOR BENOIT CASTANG, respectfully requests the following relief:

a)   That this Court issue and Order directing the prompt return of  Minor Child to his habitual residence of France in accordance with Father's rights of custody under the laws of France and Article 5 of the Convention respectively;

b)   That this Court issue an immediate Show Cause Order prohibiting the removal of Minor Child from the jurisdiction of this Court;

c)   That this Court will immediately issue an order and take into safekeeping the Child's passports and travel documents to prevent

Mother from feeling from this jurisdiction with Minor Child;

d)      That this Court issue a Show Cause Order forthwith commanding Mother to appear with Minor Child in this Court to show cause why Child has been kept from his Father and why the Minor Child should not be returned to France forthwith;

e)      That this Court schedule the Show Cause Hearing as soon as possible and the Final Trial of the matter soon thereafter, in keeping with the Supreme Court of the United States' instructions on complying with the time considerations of the Hague Convention;

f)      That if Mother fails to appear pursuant to this court's Show Cause Order, that this Court issue an Order directing that the name of Child be entered into the national police computer system missing persons section, and an arrest warrant be issued for Mother;

g)      That this Court issue an Order directing Mother to pay Father's reasonable legal costs and expenses pursuant to 22 USC §9007; and

h)      That this Court grant any such further relief as justice and Father's cause may require.

### (SIGNATURE ON FOLLOWING PAGE)

RESPECTFULLY SUBMITTED this 30th day of December, 2022.

*/s/  : Dina Khismatulina*
DINA KHISMATULINA
GA Bar No.: 827929
RENEE RICHARDSON
GA Bar No.: 786204

The Manely Firm, P.C.
75 14th Street NE
Suite 2300
Atlanta, Georgia 30309
Telephone: (770) 421-0808
Facsimile: (770) 421-0288
Tmf-atlanta@allfamilylaw.com

SAS

**Tarakdjian Alivon & Gallier**

Huissiers de Justice Associés

**14 Rue Marius Jouveau**

**13210 - SAINT REMY DE PROVENCE**

Tel : 04 90 92 02 80

**contact@huissier-st-remy.fr**

**www.huissier-saint-remy-provence-tag.fr**

# ACTE D'HUISSIER DE JUSTICE

### Coût de l'acte

Les articles font référence au Code de Commerce

| | |
|---|---|
| Émoluments (Art A444-10) | 159,00 € |
| Déplacement (Art R. 444-48) | 7,67 € |
| Sous total HT | 166,67 € |
| TVA à 20% | 33,33 € |
| **TOTAL TTC** | **200,00 €** |



Tarakdjian . Alivon . Gallier
HUISSIERS DE JUSTICE ASSOCIÉS

# PROCES VERBAL DE CONSTAT

## LE MERCREDI VINGT HUIT DÉCEMBRE DEUX MILLE VINGT DEUX
## à 14 heures 00.

## A LA REQUETE DE :

**Monsieur Igor Benoit CASTANG**, né le 10/12/1976 à ARLES, de nationalité Française, Gérant de société, demeurant 3 chemin des Jonquets, 13200 ARLES, FRANCE,

## M'AYANT EXPOSE :

Que dans le cadre du litige l'opposant à Madame Katherine KIM son ex-compagne relativement à la garde de leur enfant Adrien, Monsieur CASTANG souhaite que nous constations la signature d'un document de demande de retour d'un enfant mineur.

## DEFERANT A CETTE REQUISITION :

**Lauriane Tarakdjian, Commissaire de Justice associée au sein de la SAS Tarakdjian Alivon & Gallier, commissaire de Justice associes titulaire d'un office de commissaire de justice à la résidence de Saint Rémy de Provence 14 rue Marius Jouveau 13210 y demeurant, soussignée**

## EN PRÉSENCE DE :

Monsieur Igor Benoit CASTANG.

## SITUÉE CE JOUR DANS LES LOCAUX DE MON ÉTUDE,

## J'AI PROCÉDÉ AUX CONSTATATIONS SUIVANTES :

**Je constate**

Monsieur CASTANG Igor nous présente sa carte d'identité, nous réalisons une copie de cette carte d'identité et l'annexons à notre procès-verbal de constat.

Monsieur CASTANG un document rédigé en langue anglais, le document se nomme « IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF GEORGIA ATLANTA DIVISION »

Je constate que Monsieur CASTANG Igor signe devant nous le document dont copie est annexée à notre procès-verbal de constat.

Une copie de ce document rédigée en langue française est également annexée à notre procès-verbal de constat.



1. (28/12/2022)



2. (28/12/2022)

De tout ce que dessus, j'ai dressé le présent procès-verbal de constat pour servir et valoir ce que de droit.

Lauriane TARAKDJIAN
Huissier de Justice

# Annexe

IN THE 1UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

IGOR BENOIT CASTANG,          )
                             )
          PETITIONER,         )
                             )          Case No.:
     v.                       )
                             )
KATHERINE JEONG-EUN KIM,      )
                             )
                             )
          RESPONDENT.         )

## **VERIFICATION**

IGOR BENOIT CASTANG, Petitioner in the above-styled action, after first

being duly sworn, deposes and states that the facts in the foregoing *Verified*

*Petition for the Return of the Minor Child* are true and correct to the best of his

knowledge, information, and belief.

_____

IGOR BENOIT CASTANG,
Affiant

Sworn to and subscribed
before me this _28_ day
of _DECEMBER_, 2022.

_____

NOTARY PUBLIC



## DANS LA COUR DU DISTRICT DE GEORGIE
## DIVISION D'ATLANTA

IGOR BENOIT CASTANG,     )
)
REQUERANT,     )
)     Case No.:
v.     )
)
KATHERINE JEONG-EUN KIM,     )
)
)
REPONDANT.     )

## **VERIFICATION**

IGOR BENOIT CASTANG, Requérant dans l'affaire sus-mentionnée, déclare solennellement sous serment, que les faits dans la ci-attachée requête *Verified Petition for the Return of the Minor Child* sont au mieux de sa connaissance véridiques et corrects.

_____
IGOR BENOIT CASTANG,
Déclarant

Établit et signé devant moi
le _____ jour
de _DECEMBRE_, 2022.

_____
Huissier de justice

