[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-10426

Non-Argument Calendar

_____

IGOR BENOIT CASTANG,

Plaintiff-Appellee,

*versus*

KATHERINE JEONG-EUN KIM,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:22-cv-05136-SCJ

_____

2                     Opinion of the Court                    23-10426

Before JORDAN, NEWSOM, and BRASHER, Circuit Judges.

PER CURIAM:

This appeal arises under the Hague Convention on the Civil Aspects of International Child Abduction ("Hague Convention" or "Convention"), as implemented by the International Child Abduction Remedies Act ("ICARA"). *See* 22 U.S.C. § 9001, *et seq.* Katherine Kim, the mother, appeals the district court's order granting relief to Igor Castang, the father, and directing that their minor child be returned to France. After careful review, we affirm.

## BACKGROUND

The parties are familiar with the facts in this appeal, and we recount them only as necessary to explain our decision.

The child was born in 2018 in France where the child's mother and father resided. In 2021, a French court directed that the mother and father share custody of the child. The mother would have primary custody of the child; the father would have certain rights of secondary custody, such as overnight visitation. Specifically, the French court said, "the joint exercise of parental authority over the child, as well as the habitual residence at the mother's home with a classic right of visit and accommodation for the father are not debated." This order also contemplated that, at some point, the mother and child might move to the United States.

The father and mother's relationship deteriorated, and the mother threatened to take the child to the United States and cut off

23-10426                Opinion of the Court                3

the father's contact with the child. In response, the father sought an additional order from the French court. That order reaffirmed that the "habitual residence" of the child was to be with the mother, but it also expressly prohibited the mother from removing the child from France without the father's consent. Nonetheless, without informing the father, the mother took the child to metro Atlanta in 2022.

The father filed an ICARA petition in federal district court, seeking the return of the child to France. *See* 22 U.S.C. § 9003(b). The district court held a bench trial. After the trial, the court found that the child's habitual residence was in France and that the mother wrongly removed the child from France in breach of the father's custody rights. In determining that the child's habitual residence was France, the court noted that the child had resided in France for most of the child's life, the second French custody order contemplated that the child would remain in France absent an agreement by both parents, and neither the child nor the mother had established community ties in the United States. The court ordered that the father be allowed to take "physical custody of the Child" so that he could "return the Child to France." The court further ordered that "[u]pon arrival in France, the court acknowledges that the French custody orders from September 2021 and May 2022 will be operative, and nothing in this Order shall be read as prohibiting the Parties from pursuing further custody rights or other domestic relief in the French courts."

The mother appealed.

4                    Opinion of the Court                23-10426

## DISCUSSION

The Hague Convention's "core premise" is that "'the interests of children . . . in matters relating to their custody' are best served when custody decisions are made in the child's country of 'habitual residence.'" *Monasky v. Taglieri*, 140 S. Ct. 719, 723 (2020) (quoting Convention Preamble, Treaty Doc., at 7). To that end, ICARA requires the "prompt return" of a child to the child's country of habitual residence when the child has been wrongfully removed to or retained in the United States. Art. 1(a), Treaty Doc., at 7; *see also* Art. 12. Accordingly, "if a court finds that a child was wrongfully removed from the child's country of habitual residence, the court ordinarily must order the child's return." *Golan v. Saada*, 142 S. Ct. 1880, 1887 (2022).

The mother argues that the district court made two errors in ordering the child's return to France under ICARA and the Hague Convention. Neither argument has merit.

First, the mother argues that the district court exceeded its subject matter jurisdiction under ICARA by modifying the French custody orders and awarding custody to the father. "The district court's subject matter jurisdiction is a question of law that we review *de novo*." *United States v. Iguaran*, 821 F.3d 1335, 1336 (11th Cir. 2016).

We cannot say the district court exceeded its jurisdiction. "A court considering an ICARA petition has jurisdiction to decide the merits only of the wrongful removal claim, not of any underlying

23-10426                Opinion of the Court                5

custody dispute." *Lops v. Lops*, 140 F.3d 927, 936 (11th Cir. 1998). And that is all the district court did here. As required by the Hague Convention, the district court's order merely "restore[d] the pre-abduction status quo" by directing that the child be promptly returned to France. *Id.* Although the district court's order used the word "custody" in directing that the father be allowed physical possession of the child to return the child to France, the district court made clear that its order had no effect on the ongoing custodial rights of either parent and that the French court's orders remained in effect.

Second, the mother argues that the district court erred in holding that the child's "habitual residence" is France. To secure return of the child, the father had the burden to establish, among other things, that the child "was a habitual resident" of France "immediately before" the child was removed to the United States. *See Berenguala-Alverado v. Castanos*, 950 F.3d 1352, 1358 (11th Cir. 2020) (quoting *Chafin v. Chafin*, 742 F.3d 934, 938 (11th Cir. 2013)). The mother argues that the district court should have found that the child's "habitual residence" is with her, the mother, in whatever country she happens to reside. The mother points out that the French court directed that the child's "habitual residence" would be with her, the mother. And the mother argues that the district court erroneously refused to give "significant weight" to that custody determination.

As an initial matter, the parties dispute the standard of review we should apply to this question—*de novo* or clear error. The

Supreme Court has explained that "[a]bsent a treaty or statutory prescription, the appropriate level of deference to a trial court's habitual-residence determination depends on whether that determination resolves a question of law, a question of fact, or a mixed question of law and fact." *Monasky*, 140 S. Ct. at 730. The mother argues that the district court committed an error of law in interpreting the French custody orders and the "habitual residence" inquiry under the Hague Convention and, thus, *de novo* review applies. The father argues that the mother's appeal raises a "question of pure fact."

Assuming without deciding that we should review the district court's reasoning *de novo*, we cannot say the district court erred. The question of habitual residence under the Hague Convention must be answered by the "totality of the circumstances." *Id.* at 726–730. This inquiry is "fact-sensitive" and not "categorical" *Id.* at 726. Accordingly, "courts must be 'sensitive to the unique circumstances of the case and informed by common sense" *Id.* at 727 (quoting *Redmond v. Redmond*, 724 F.3d 729, 744 (7th Cir. 2013)). The mother's argument, however, is based mostly on semantics. She argues that, because the French court used the phrase "habitual residence" to award her primary custody and the Convention uses "habitual residence" to identify the child's home country, her country of residence is necessarily the child's "habitual residence" under the Hague Convention.

The district court correctly rejected this argument. The mother's proposed rule is precisely the kind of "categorical" rule

23-10426                 Opinion of the Court                 7

that the Supreme Court has warned us against. It also conflates custody—which courts are not to determine under ICARA—with a child's habitual residence—which courts must determine under ICARA. The question under the Hague Convention is a fact question about which country's courts should adjudicate the parents' custody dispute, not which parent has primary custody. Although a parent's country of residence and status as primary caregiver should be considered in the totality of the circumstances, the district court was correct to reject the mother's argument that the child's habitual residence must always be wherever the child's primary caregiver resides at any particular time.

## CONCLUSION

The district court's judgment is **AFFIRMED.**

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

May 09, 2023

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number:  23-10426-QQ
Case Style:  Igor Castang v. Katherine Jeong-Eun Kim
District Court Docket No:  1:22-cv-05136-SCJ

All counsel must file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause. Although not required, non-incarcerated pro se parties are permitted to use the ECF system by registering for an account at www.pacer.gov. Information and training materials related to electronic filing are available on the Court's website. Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for writ of certiorari (whichever is later) via the eVoucher system. Please contact the CJA Team at (404) 335-6167 or cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

Pursuant to Fed.R.App.P. 39, costs taxed against the appellant.

Please use the most recent version of the Bill of Costs form available on the court's website at www.ca11.uscourts.gov.

Clerk's Office Phone Numbers
General Information:               404-335-6100     Attorney Admissions: 404-335-6122
New / Before Briefing Cases:      404-335-6135     Capital Cases:           404-335-6200
Cases in Briefing / After Opinion: 404-335-6130    CM/ECF Help Desk:  404-335-6125
Cases Set for Oral Argument:      404-335-6141

OPIN-1A Issuance of Opinion With Costs